Good morning. The simple question in this case is whether the manner in which the Board of Immigration Appeals considered and decided and ultimately denied Glenn Markle's motion to reopen removal proceedings was lawful. In the case, Mr. Markle filed a timely motion to reopen removal proceedings within the 90 day period committed by law. The basis for that motion was that his wife, Leona, had just recently filed an immediate relative visa petition for his benefit. The filing of that petition was what first made Mr. Markle eligible for adjustment of status. The Board's requirements for reopening proceedings based on a newly filed immediate relative petition are set forth in matter of velarde. And the velarde standard violates noncitizens' Fifth Amendment right to due process of law and removal proceedings, both on its face and as applied in Mr. Markle's case. The offensive element of the velarde standard is the fifth prong, which precludes reopening if U.S. Immigration and Customs Enforcement, which I will refer to as ICE, opposes reopening. Counsel, it is a velarde by Chaco. I wonder if that is inapplicable, because that case presumes that the marriage occurred after the alien was ordered removed. Whereas in this case, Markle was married before he ever appeared before the IJ, and he had an opportunity to present an application for adjustment of status based on his marriage. The problem with that reasoning is that it is not his marriage which qualifies him for adjustment of status. It is the filing of the visa petition itself. And Congress has given the exclusive power to file a visa petition to the U.S. citizen relative by law. Otherwise, it would be possible for Mr. Markle or any other noncitizen who was married to a U.S. citizen to file and sign his own paperwork with U.S. Citizenship and Immigration Services without the cooperation of a spouse. If you take that as a given, why then are you citing velarde by Chaco? What's the basis of that case that applies to your contention? That was the standard that the Board used to deny reopening. Ultimately, it said that velarde by Chaco governs all cases where there is a newly filed I-130 petition and a request to reopen based thereon. And it denied reopening under that fifth prong because the government filed an opposition. And it did so, most importantly, without truly considering the legal reasoning or the basis of the government's opposition to reopening. Had it looked at that basis that Mr. Markle had supposedly abandoned an opportunity to apply for adjustment of status, it would have been by HCFR 1003.2C1, which requires the BIA to deny motions to reopen, and I'm quoting, if it appears that the alien's right to apply for such relief was fully explained to him or her and an opportunity to apply, therefore, was afforded at the former hearing, unless the relief is sought on the basis of circumstances that have arisen subsequent to the hearing. In this case, the I.J. informed Mr. Markle of his right to file an adjustment application at his initial hearing. His wife did not take advantage of the opportunity to timely file the application. The fact that she didn't do that doesn't mean that the opportunity didn't exist. So how do you get around the CFR citation that I mentioned? Your Honor, I believe that that citation, that provision only makes sense when you have an actual eligibility for relief. What the judge advised Mr. Markle of was the possibility that he could be eligible for relief if his wife were to file a visa petition. She never did that, so he never had that opportunity, and I don't believe that you can deny him his request for reopening proceedings because of an action that his wife didn't take when he was in front of the immigration judge, neither the immigration judge nor Mr. Markle. How long had she been his wife? They've been married for eight years. And how long did she have to file? She had presumably a number of months at any rate. It wasn't that long. And how long, how much time passed before she did file? A number of years. And what in this record explains the delay? Our position is that no. What in the record explains the delay? There is nothing in the record that explains the delay. Yes. Our position is that the reason for the delay is immaterial because it is the legal fact, the historical fact of the filing of that petition that renders Mr. Markle eligible for adjustment. We are looking at what the court assumed, and the court assumed because of the delay that he what? I don't know what the court assumed. That he abandoned his petition. And we have to look at the record to see is this reasonable? Could a court reasonably conclude that based on this record? And what do we have to find? We have to find what the record, we have to go where the record leads us, don't we? Yes, you do. But the record does not. So can you fill in the gap? Can you tell us what, why? That's why you say, oh, it doesn't matter. Well, maybe it doesn't. But that's not what we're looking at. We have to look to see did the court reasonably decide he had abandoned? And on this record, it's pretty hard to say the court didn't. I cannot see how one can abandon an application for a form of relief when he was never eligible for that form of relief. Yes, but he was in a position to be eligible for it. He was married. He had an opportunity to have the form submitted, and the form was not submitted. The court looked, says he's abandoned because he didn't follow through. Well, that is what the government alleges. Do you think that's the posture of the case that we've got to decide? I think that's the posture of the case. The problem with the theory that he could have caused the petition to be filed is that that's not the scheme that Congress has set up. I expect, if you want to speculate, I expect that his wife had to make up her mind whether she wanted to do it or whether she didn't. I don't know why she didn't want to do it, but it's pretty clear that she knew there was a requirement, or she could have known there was a requirement, and she didn't file a form. That's correct, but eventually she did. And when she did, it was filed within the appropriate period, and a motion to reopen was timely filed according to the rules set forth by the Board of Immigration Appeals. I have seen numerous reasons for delayed filings of I-130 petitions. I mean, it could be the court's fault. And we sure don't know, and we aren't going to decide the case on that. What we have to decide was, was the court, did the court have a reasonable basis for deciding his petition was abandoned? And on this record, it appears that the court did. So you have to tell us why not. That's why. I believe that, in fact, what the immigration judge should have found was that the application was pretermitted because he hadn't established prime facia eligibility. There's no evidence of record that a petition was ever filed, and without a petition even being filed, the court shouldn't have even accepted the adjustment of status paperwork, because he's – and this was even before Vilar Day, when the court couldn't continue or reopen proceedings based simply upon the filing of a motion to reopen. The standard at the time was that in order to apply for adjustment of status before the immigration judge, you must have had an approved visa petition. Do you want to reserve any rebuttal time? I would. It's up to you. I would. If I can just finish that sentence. Fine. The standard at the time was that you must have had an approved visa petition to even request adjustment of status from the immigration judge. And I'll resume.  Very good. Thank you. We'll now hear from Megan Callan from the government. Good morning, Your Honor. May it please the Court. I agree with opposing counsel that the primary question before this panel is whether the manner in which the BIA denied the motion to reopen was lawful. And because both the manner and the outcome were lawful, we respectfully request that the petition be denied. At this moment, let me just take a step back and clarify what I believe is already set forth in the briefs in the 28Js, and that is that although originally a habeas on appeal, this has now been converted to a petition for review via the Real ID Act. And that under this Court's decision in Fernandez, the petition for review is this Court's review of the BIA's refusal to reopen. That is, the denial of Mr. Markle's motion to reopen. The panel today may review for abuse of discretion the BIA's decision that the motion to reopen should be denied in primary point because both the DHS opposition to Mr. Markle's motion to reopen and the DHS motion to reconsider were based upon a BIA regulation which Judge Smith has already cited, and that is CFR 1003.2C1. This regulation sets forth the manner in which the BIA's denial was lawful. In fact, the BIA shall not grant a motion to reopen unless evidence was not available and could not have been discovered or presented at the prior opening. Judge Ferris asked whether the record explained why there were gaps in Mr. Markle's presentation of evidence that could have supported his adjustment for his application for adjustment of status or his application for cancellation of removal. And yes, Your Honor, I believe the record does explain to some extent why those applications were not presented in a timely manner, and the record does certainly make clear that Mr. Markle was afforded every opportunity to do so. On August 1st, 1999, Mr. Markle and Mrs. Markle were married. On August 12th, Mr. Markle stated his intention before the immigration judge to pursue relief through adjustment of status, cancellation of removal, and voluntary departure. At that hearing, the immigration judge made plain, and the immigration judge's warnings are in the record before the Court, that a failure to complete the applications for relief would result in the unavailability of that relief to a petitioner, and it would also result in the IJs determining that those applications were deemed abandoned. Mr. Markle sought an extension, which was granted. After the extension period expired, the applications were still not complete, and ultimately the IJ denied those applications, deemed them abandoned. Immediately thereafter, there was a motion by Markle's counsel to withdraw his counsel. And in going through the papers that were filed in support of those applications, it's clear that the applications were partially submitted but never perfected. And so essentially from August 1st, 1999 on, Mr. Markle, as married, was potentially available to apply for adjustment of status and never perfected that opportunity. Years go by, including after the BIA's upholding of the IJ's initial denial. In 2002, Mr. Markle seeks reopening, and then ultimately it is after the BIA's opposition is first missed but then refound by the BIA when the service moves to reconsider that it's made clear that this is not a Velarde case at all. In fact, the INS made clear to the BIA in its moving papers that the reason the reopening had to be denied was because Mr. Markle's case does not fit the regulatory scheme of 1003. If there are no further questions, I believe the rest of our arguments are in the  record. Thank you very much. Thank you. Mr. Smith, do you want to give us your rebuttal, please? I, in rebuttal, would just like to clarify what I believe the crux of the matter here is. And I believe that we're looking at the wrong part of the regulation governing reopening, to focus on whether or not the judge advised a noncitizen of a right to file an application for which he was ineligible at the time. It's a legal nullity. He could not have done anything with that warning. It was not in his control. But you don't question, do you, Mr. Smith, that Mr. Markle, after he was married during an extended period of time, if my recollection serves me, we're talking 6, 7, 8 years. During any of that period of time, his wife could have taken the action that he needed to do, needed to have taken. She could have. Again, that is her right and her decision to make. And there are reasons that Congress said only the U.S. citizen can petition to immigrate. They wanted the citizen to have control over that matter, whether it's out of reluctance or for whatever concern. I believe that the crux of the matter here really is new evidence. Does the filing of that petition constitute new evidence or new circumstances that didn't exist when Mr. Markle was in front of the immigration judge? And we argue that it did. I might analogize to an asylum case where a political assassination occurs after the judge's decision. It's a fact. It's a new fact that happened that may affect the outcome of the case and should require reopening. Thank you. Thank you very much. The case just heard, Markle v. Ridge, is submitted. And we will now hear argument in Luong v. Ridge. You may proceed whenever you wish.
judges: Farris, M. Smith, Sandoval